UNITED STATES v. BOYLE MFG. CO., INC. (No. 4380) [1]

United States Court of Customs and Patent Appeals, May 3, 1943

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Joseph F. Donohue*, special attorneys, of counsel) for the United States.
*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellee.

[Oral argument April 7, 1943, by Mr. Donohue and Mr. Tuttle]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

In this case the United States has appealed from a judgment of the United States Customs Court (First Division) adjudging that appellee is entitled to recover drawback on 960 metal drums exported from the United States to Australia in May 1937. The drums had been manufactured in the United States by appellee from imported material upon which duty had been paid.

Drawback was claimed by appellee on 1,060 drums under the provisions of section 313 (a) of the Tariff Act of 1930.

Said section 313 (a) reads as follows:

[1] C. A. D. 240.

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from wheat imported after ninety days after the date of the enactment of this Act. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

Articles 1023 and 1034 of the Customs Regulations of 1931 read as follows:

Art. 1023. Notice of intent to export—Local or direct exportation from a seaboard or frontier port.—(a) At least six hours, but not more than 90 days, before the lading of the merchandise to be exported, the claimant for drawback, or his duly authorized agent, shall file with the collector of customs at the port of exportation a notice of intent to export in duplicate on customs Form 7511. A third copy of the notice of intent shall be delivered to the customs officer in charge at the place of lading at the time the goods are delivered to the exporting vessel or conveyance. Such notices of intent shall give the name of the exporting vessel, or in the case of a vehicle the name of the carrier, and place of lading, describe the merchandise by marks and numbers and state in detail the kind and contents of the packages, the quantity, weight (gross and net), gauge, or measure.

(b) On receipt and acceptance at the customhouse of the notice of intent, the collector shall note thereon the date and hour of receipt and transmit one copy to the surveyor, or to the customs officer in charge at the place of lading, with the order to inspect and the other copy to the Comptroller of Customs.

Art. 1034. Failure to file notices of intent—Local shipments.—The failure to file a timely notice of intent with the collector, in accordance with the provisions of article 1023, shall not bar the payment of drawback, provided a notice of intent is delivered to the inspecting officer as required, nor shall failure to deliver a copy of the notice of intent to the inspecting officer bar the payment of drawback, providing a timely notice of intent was filed with the collector, and provided, further, that no other act or omission on the part of the shipper, the carrier, or the agent of either, resulted in the failure to secure inspection.

The case was first called for trial at Los Angeles on March 27, 1939, when a stipulation was entered into as follows:

Mr. TUTTLE. In this case, your Honor, the protest claims that the collector's refusal to pay drawback on 1,060 single trip drums covered by drawback entry 114, was illegal, and that payment should have been made under section 313 of the Tariff Act of 1930.

I offer to stipulate with Government counsel the following facts: That the merchandise covered by this protest consists of 1,060 metal drums, manufactured in the United States by the Boyle Manufacturing Co., Inc., with the use of imported material, upon which duty had been paid; and that said drums were manufactured and records were kept by said Boyle Manufacturing Co., Inc., in accordance with the conditions specified in T. D. 42551 (B); that except as stated below all regulations of the Secretary of Treasury issued under authority of section 313 (i) of the Tariff Act of 1930 relating to the manufacture of articles from imported material and to the exportation of said articles from the United States were complied with, and that the payment of drawback upon these drums was refused solely because of an alleged noncompliance with article 1044 (a), Customs

Regulations of 1937 pertaining to the filing of a notice of intent to export, Customs Form 7511; that said drums are referred to and described in Los Angeles drawback entry 114, dated April 7, 1938, as follows:

Notice of intent LA 2282, SF 17340, exporting vessel *New Zealand*, May 15' 1937. Shipper, California-Texas Oil Co. Number of packages and size, 100 55-gallons, 40 55-gallons, 720 55-gallons, 200 55-gallons; and that the proper rate of drawback on these particular drums is 0.2312946 cents each net; that said 1,060 drums are also referred to and described in San Francisco notice of intent to export Customs Form 7511–B, being a portion of the drums described therein as follows:

Marks: Texaco Adelaide, 165, single trip, 55 gallons; and under the mark, Texaco Melbourne, 720, single trip, 55 gallons; Texaco Freemantle, 40, single trip, 55 gallons; Texaco Sydney, 720, single trip, 55 gallons; Texaco Brisbane, 200, single trip, 55 gallons; and that the shipper or exporter of the drums referred to above is stated in said notice of intent to be the California Texas Oil Co., Ltd.

It is further stipulated that the notice of intent to export, San Francisco No. 17340 was filed with the Collector of Customs in San Francisco May 15, 1937, at 10:45 a. m. and received by the loading inspector of the Steamer *New Zealand* on May 17, 1937, at 10:50 a. m.; also that the shipper's copy of the notice of intent to export, San Francisco No. 17340 was received by the inspector in charge of loading of the Steamer *New Zealand* on May 18, 1937, at 10:00 a. m.

Further, that although the notice of intent, 17340, covers 1,845 drums this protest is limited to such of those drums as may be shown to have been loaded after 4:45 p. m. on May 15, 1937.

Mr. WELSH. On the advice of A. E. Duncan, the drawback liquidator in the office of the Collector of Customs, Los Angeles, Calif., the Government so stipulates.

The trial was then transferred to the next San Francisco docket· On November 21, 1939, the trial was resumed, whereupon the following proceedings took place:

Mr. TUTTLE. This case has been partially heard. It is a Los Angeles protest.

I offer in evidence a letter dated September 6, 1938, addressed to the Collector of Customs at Los Angeles and signed by H. A. Bennett, Acting Commissioner of Customs.

Mr. WEEKS. I do not object to that.

Judge CLINE. It will be marked.

(The letter was received in evidence and marked "Plaintiff's Exhibit 1 in Protest No. 975670–G," as of this date.)

The Government offered no evidence and the case was submitted to the court upon the stipulation and said letter Exhibit 1.

After reciting the receipt of the notice of intent to export as set forth in the stipulation, Exhibit 1 states:

In making his return on the said notice, the lading inspector reported that the notice was received by him on May 17, 1937, at 10:50 a. m.; and that the merchandise was not inspected by him nor laden under his supervision, the failure to inspect being due to "N. I. not received until after the ship was laden," but that the records of the Parr Terminal Corporation show that packages of similar description were laden on the S. S. *New Zealand* for Australia on May 15/16, 1937, "at various hours 8 a. m. May 15 to 6 a. m. May 16/37." He further reported: "Ship worked all night under night order"; and that a shipper's copy of the notice of intent was received by him on May 18, 1937, at 10 a. m.

Although the notice of intent covers 1,845 drums, claim is made in the entry for drawback only on 1,060 drums.

There is attached to your letter certain correspondence (presumably submitted by the claimant) from which it appears that in March 1938, a representative of the California Texas Oil Co. requested information of the Parr Richmond Terminal Corporation as to the time of lading, and particularly as to the number of drums laden after 4:45 p. m. on May 15, 1937. In a reply dated March 29, 1938, the said corporation states, in part:

"We are sorry that we do not have an actual count of the drums loaded after 4:45 p. m. but taking an average of the total drums loaded against the total hours worked we can arrive at a very equitable figure.

"The vessel loaded 2,185 drums and 20 cartons and worked approximately 18¼ hours which would average 120 drums per hour. From 8 a. m. until 4:45 p. m. would amount to 7¾ hours @ 120 drums per hour figures 940 drums loaded during this period leaving 1,245 drums to be loaded after that time. Based on the order of port loading we believe the 1,245 drums to be made up as follows:

"790 drums Sydney;
"210 drums Brisbane;
"145 drums Freemantle;
"100 drums Melbourne."

Your letter and its enclosures were referred to the Collector of Customs, San Francisco, Calif., for report as to the time of delivery of the merchandise in question on the pier, and particularly whether the records showed delivery on the pier after 4:45 p. m. May 15, 1937; also whether or not there was a compliance with the regulations relating to night, Sunday, or holiday lading (art. 1049, Customs Regulations of 1937). From his report, dated August 13, 1938 (copy enclosed for your information), it appears that the inspector regularly on duty at the place of lading was present during the entire period of lading of the vessel, including the night of May 15, 1937, and that the vessel loaded under a night license. The collector also quotes a report of the lading inspector as to the time of delivery of the merchandise on the pier, in which he states: "the Parr Terminal records show that all cargo for the *New Zealand* was received on the pier May 14/15, 1937, and while no time shows for any particular lot, the whole was unladen from cars by 4 p. m. on May 15 and mostly laden in ship the night of the 15th."

You will note that the Inspector's report shows that all of the 1,060 drums on which drawback is claimed were delivered on the pier some time prior to 4:45 p. m. on May 15, 1937 (in other words, prior to the expiration of the 6-hour period following the filing of the notice of intent in the collector's office). In the circumstances, and as the record presents doubt as to how many, if any, of the drums were laden after 4:45 p. m., the Bureau must decline to authorize the allowance of drawback on any of the drums. You will be governed accordingly.

It is conceded that under Regulation 1023, *supra*, appellant was not entitled to drawback on drums loaded before 4:45 p. m. on May 15, 1937.

Upon the record made the trial court found that it was established that appellee was entitled to drawback upon 960 drums and entered judgment accordingly.

The Government in its brief stated the issue before us as follows:

### The Issue

Whether the uncontradicted evidence warranted the lower court in finding that 960 drums of the 1,060 drums covered by the protest (R. 4) were laden after 4:45 p. m., on May 15, 1937.

Upon oral argument before us appellant's counsel contended that said Exhibit 1 had no evidentiary value as proof of the facts therein stated, but no objection was made to the introduction of said Exhibit

and no error was assigned with respect to the trial court's consideration thereof. Furthermore, appellant's brief accepts the statements in said exhibit as established facts. Therefore this contention of appellant will not be considered by us.

It appears that the trial court found from the record that the ship loaded a total of 2,185 drums and 20 cartons, or a total of 2,205 units, including the 1,845 drawback drums, in 18¼ hours from 8 a. m. May 15, an average of 120 units per hour; that the order of port loading apparently was that the units for Adelaide, Australia, should be laden first, and the remainder in the following order, viz, Melbourne, Sydney, Brisbane, and Freemantle; that the record shows that of the 145 drums destined for Freemantle 40 were drawback drums; of the 210 drums destined for Brisbane 200 were drawback drums; and that of the 790 drums destined for Sydney 720 were drawback drums. While the decision does not state the number of drawback drums destined for Adelaide and Melbourne, it appears that of the 230 drums destined for Adelaide 165 were drawback drums, and of the 815 drums destined for Melbourne 720 were drawback drums.

There appears to be a slight discrepancy of 5 drums between the shipping invoice and the number of drums stated in Exhibit 1 as having been loaded, but this is not material upon the question before us.

It was the view of the trial court that considering the average rate of loading, it was a fair inference that of the total number of units 930 were loaded before 4:45 p. m. on May 15 (the hour at which the notice of intent to export became effective) and 1,275 units were loaded after that time; that considering the evidence with regard to the order of loading it should be held that the drums destined for Freemantle, Brisbane, and Sydney, totaling 1,145 drums (of which 960 were drawback drums) were last in order of loading, and were loaded after 4:45 p. m. on May 15. Therefore the court concluded that appellant is entitled to drawback upon 960 drums. In arriving at this conclusion the trial court allowed nothing for drawback on the drums destined for Melbourne or Adelaide, the total number of which was 1,045 of which 885 were drawback drums.

According to Exhibit 1 it was estimated by the dock corporation loading the drums that 100 of the drums destined for Melbourne were loaded after 4:45 p. m., but this was ignored by the court, properly we think, for even accepting such estimate there was nothing to indicate how many of the 100 drums were drawback drums. However, this estimate that 100 of the drums were loaded after 4:45 p. m. is some indication that none of the drums destined for Freemantle, Brisbane, or Sydney were loaded before that time.

Upon the whole record we are of the opinion that the trial court was warranted in holding that appellee was entitled to drawback on 960 drums.

True, in arriving at this conclusion, the trial court had no direct evidence of the ultimate fact, but we are satisfied that the inference drawn from the facts of record fairly supports its conclusion.

That a finding may be based upon inferences drawn from established facts is well established. See 32 C. J. S. sec. 1042.

For the reasons stated the judgement appealed from is *affirmed*.